IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BROWN BARK II, L.P.
for itself and as assignee of AmSouth
Bank, N.A., n/k/a Regions Bank, N.A.,
and Southern Specialty Brands, Inc.,

    Plaintiff,

     v.

DIXIE MILLS, LLC, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:08-CV-1303-TWT

## ORDER

This is an action for trademark infringement.  It is before the Court on the

Defendants' Motions for Summary Judgment [Docs. 182, 190, 191] and the Plaintiff's

Motion for Partial Summary Judgment [Docs. 184, 185].  For the reasons stated

below, Dixie Mills' Motion for Summary Judgment [Doc. 190] is GRANTED, El

Dorado's Motion for Summary Judgment [Doc. 191] is GRANTED, Adams' Motion

for Summary Judgment [Doc. 182] is GRANTED, and Brown Bark's Motions for

Partial Summary Judgment [Doc. 184, 185] are DENIED.

### I.  Introduction

Southern Speciality Brands ("SSB") produced and marketed various food

products, including corn meal, rice, grits, beans, and southern baking mixes, until it

ceased doing business in 2007.  It held several trademarks, including Dixie Lily, Pine Mountain, Arnett's, and Alabama King.  Jack Donald and Richard Colwell were shareholders and directors of SSB.  Jack Donald also owned a facility in Tifton, Georgia, where SSB produced and packaged its products.  Darrell Donald was an officer and manager at SSB.

Adams Foods, Inc., Adams Milling, Inc., and Ted Adams (collectively "Adams") sold milled food products under the Adams trademark until 1999.  That year, Adams sold the Adams mark and its accompanying goodwill to SSB.  According to Adams, SSB gave Adams a note, secured by a shared first-position security interest on the Adams mark.  Although First American already had a security interest in all after-acquired assets of SSB, it allegedly consented to the transaction in a subordination agreement.

In 2006, SSB began having financial difficulties and defaulted on its payments to Adams.  On June 16, 2006, Adams obtained a judgment against SSB in the Circuit Court of Dale County, Alabama.  The judgment gave Adams full rights to the Adams mark.  Adams is unsure whether Regions Bank, which allegedly shared a security interest in the Adams mark at the time, received notice of the lawsuit.

Around the same time, SSB also defaulted on its payments to Regions Bank.  On June 26, 2007, Regions sold SSB's loans as part of a loan portfolio to Brown Bark

II, L.P., an investment partnership.  Shortly thereafter, Jack Donald locked SSB out of the Tifton facility, which forced the company to stop producing and distributing its products.  According to Brown Bark, when this happened, SSB could not pay the $3.2 million it owed under its loans.  Brown Bark obtained a judgment against SSB and disposed of the trademarks through a public sale in November 2007.  Brown Bark was the highest bidder at the sale and took ownership of the marks.

Meanwhile, Jack Donald, Darrell Donald, and Richard Colwell formed Dixie Mills, LLC.  Jack Donald offered Brown Bark $300,000 to purchase the SSB trademarks, which Brown Bark declined.  Shortly thereafter, Dixie Mills started producing and marketing milled food products using similar marks and packaging. They used Dixie Mills instead of Dixie Lily, Alabama instead of Alabama King, Donald Arnett instead of Arnett's, and Stone Mountain instead of Pine Mountain.  In addition, they asked El Dorado Paper Bag Manufacturing Co., the packaging company used by SSB, to produce nearly identical packaging for the goods.  Around the same time, Adams began selling milled food products under the Adams mark again.  Dixie Mills packaged and distributed these products for Adams at its Tifton facility.  In April 2008, Brown Bark sued Adams, El Dorado, and Dixie Mills for trademark and trade dress infringement.  The complaint also includes claims for replevin, conversion,

breach of fiduciary duty, and civil conspiracy.  All parties now move for summary judgment.

## II.   Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.   Adams' Motion for Summary Judgment

The Adams Defendants   move for summary judgment on Brown Bark's trademark infringement, unfair competition, and civil conspiracy claims.

### A.   Trademark Infringement and Unfair Competition Claims

Adams says that it is entitled to summary judgment on Brown Bark's trademark infringement and unfair competition claims because it has superior rights to the

Adams mark.  Adams also says that it is entitled to summary judgment even if it does not have superior rights because (1) Brown Bark received the mark through an assignment in gross; (2) Brown Bark abandoned the mark through non-use; (3) the mark is not inherently distinctive and has not acquired secondary meaning; and (4) Brown Bark cannot prove damages.

    1. <u>Ownership of Mark</u>

  Adams says that it owns the Adams mark.  After SSB defaulted on its note to Adams, Adams obtained a judgment against SSB in the Circuit Court of Dale County, Alabama.  The judgment gave Adams the Adams mark and its accompanying goodwill.  Adams says that this Court must give full faith and credit to the state court judgment.  Under the full faith and credit statute, a federal court must give a state court judgment the same preclusive effect that the judgment would receive under the law of the state in which the judgment was rendered.

  Under Alabama law, a party may not be bound by a judgment unless it was a party to the judgment or its interests were adequately represented.  <u>N.A.A.C.P. v. Hunt</u>, 891 F.2d 1555, 1560-61 (11th Cir. 1990).  Here, Brown Bark was not a party to the judgment.  However, it acquired its alleged rights in the mark from Regions Bank which was in privity with SSB.  <u>Id.</u>  Accordingly, under Alabama law, the state

court judgment is binding on Brown Bark.  Therefore, the full faith and credit statute

does  require this Court to give the judgment preclusive effect.

> 2.    Assignment in Gross

Adams also argues that, even if Brown Bark received superior rights to the

Adams mark, it did so through an assignment in gross.  An assignment in gross occurs

when a trademark is transferred without its accompanying goodwill.  Under common

law and § 10 of the Lanham Act, trademarks may not be transferred in this manner.

1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 18:2 (4th

ed. 2010).  The Plaintiff's response is that the "argument, while novel, does not hold

water."  (Plaintiff's Memorandum of Law, at 15).  The Defendants' citation to

McCarthy's treatise would suggest that the argument has some basis in trademark law.

Indeed, the caselaw provides ample support for the Defendants' argument.    "A

trademark cannot be sold 'in gross,' that is, separately from the essential assets used

to make the product or service that the trademark identifies."  Green River Bottling

Co. v. Green River Corp., 997 F.2d 359, 362 (7th Cir. 1993).  "The discontinuity

would be too great. The consumer would have no assurance that he was getting the

same thing (more or less) in buying the product or service from its new maker."  Id.

"The point is not that the product to which a trademark is affixed can never change.

Many trademarked products, ranging from Chevrolets to Coca-Cola, have changed

enormously over the years. But in these cases the consumer always knew whose product it was that he was getting. The prohibition of sales in gross protects his expectations." Id.

The Plaintiff claims that it obtained the SSB marks in contemplation that they would be used with substantially the same products. But it is undisputed that the Adams mark has not been used by the Plaintiff in connection with the production or sale of any products. The Plaintiff acquired the mark with the intention of selling it along with the other SSB marks. The business of SSB had ceased; there was no goodwill to acquire at the time that the Plaintiff purchased the marks at a foreclosure sale. The Plaintiff has not shown that it was successful in acquiring any tangible or intangible aspect of the business of SSB apart from the marks. "A trade name or mark is merely a symbol of goodwill; it has no independent significance apart from the goodwill it symbolizes." Marshak v. Green, 746 F.2d 927, 929 (2nd Cir. 1984). "There are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable[.]" Id. "Use of the mark by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another." Id. "[T]he consumers might buy a product thinking it to be of one quality or having certain characteristics and could find only

too late to be another.  To say that this would be remedied by the public soon losing

faith in the product fails to give the consumer the protection it initially deserves."

Pepsico, Inc. v. Grapette Co., 416 F.2d 285, 289 (8th Cir. 1969).  The rule against

assignments in gross seems particularly to fit this case.  Therefore, the Plaintiff has no

claim for trademark infringement with respect to the Adams mark.

       3.   Secondary Meaning

Adams also argues that even if Brown Bark acquired the trademark when it

foreclosed on SSB's assets, the trademark is not protected under federal or state law.

Because the Adams mark is unregistered, Brown Bark must show that the mark is

inherently distinctive or has acquired secondary meaning.  Montgomery v. Noga, 168

F.3d 1282, 1300 (11th Cir. 1999).  Secondary meaning exists where there is a mental

association in buyers' minds between a product's trademark and its source.  The

plaintiff must prove that such an association exists by a preponderance of the

evidence.  In so doing, the following factors may be relevant: (1) direct consumer

testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4)

amount of sales and number of customers; (5) established place in the market; (6)

amount and manner of advertising; and (7) proof of intentional copying.  Echo Travel,

Inc. v. Travel Assocs., Inc., 870 F.2d 1264 (7th Cir. 1989); see also  Conagra, Inc. v.

Singleton, 743 F.2d 1508, 224 U.S.P.Q. 552 (11th Cir. 1984). Secondary meaning is

an indication of source of the goods.  Because Brown Bark has never used the mark for any goods or services, it has no secondary meaning in association with the Plaintiff.  For this reason as well, the Plaintiff has no trademark infringement claim against the Adams Defendants.

B.    Civil Conspiracy Claim

Adams also moves for summary judgment on Brown Bark's civil conspiracy claim.  To recover damages on a civil conspiracy claim under Georgia law, the plaintiff must show that "two or more persons, acting in concert, engaged in conduct that constitutes a tort."  Miller v. Lomax, 266 Ga. App. 93, 103 (2004).  There is evidence that Dixie Mills packaged and distributed products under the Adams brand. Because the Plaintiff's trademark infringement claim fails, there was no tort committed by either Defendant.  Therefore, Adams is entitled to summary judgment on this claim.

IV.   Dixie Mills' Motion for Summary Judgment

Dixie Mills moves for summary judgment on Brown Bark's trademark infringement, unfair competition, conversion, replevin, and civil conspiracy claims.

A.    Trademark Infringement and Unfair Competition Claims

1.    Dixie Lily, Alabama King, and Arnett's Brands

Brown Bark says that Dixie Mills infringed the trademarks and trade dress associated with its Dixie Lily, Alabama King, and Arnett's brands.  Section 43(a) of the Lanham Act creates a federal cause of action for trademark and trade dress infringement, even if the marks or trade dress are not registered.   To show infringement, a plaintiff must prove that (1) the plaintiff's trademark or trade dress is inherently distinctive or has acquired secondary meaning and (2) the defendant's trademark or trade dress is confusingly similar to the plaintiff's.  Montgomery v. Noga, 168 F.3d 1282, 1300 (11th Cir. 1999).  In trade dress cases, the plaintiff must also show that the trade dress is not functional.

Because trade dress is protected under substantially the same rules as trademarks, courts sometimes analyze trade dress and trademarks together under § 43(a).  See Platinum Home Mortg. Corp. v. Platinum Financial Group, Inc., 149 F.3d 722, 726 n.1 (7th Cir. 1998) ("The term trademark can be used in a broad and generic sense to denote the entire field of trademarks, service marks, trade names, and trade dress."); Island Insteel Systems, Inc. v. Waters, 296 F.3d 200, 206 (3rd Cir. 2002) ("We adopt the common usage of the term 'trademark' to refer generically to the entire field of trademarks, service mark, trade names, and trade dress.").  This is

particularly appropriate here, where the trademarks and trade dress merge to form a single impression on the consumer.  Therefore, to the extent practicable, the Court analyzes Brown Bark's trademark and trade dress claims together.

In addition to its Lanham Act claims, Brown Bark also asserts trademark-related claims under federal and state common law and Georgia statutory law.  These claims are governed by the same standard as Brown Bark's claims under the Lanham Act.  See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d 833, 839 (11th Cir. 1983) (applying Lanham Act standard to related Georgia deceptive trade practices and unfair competition counts); Amstar Corp. v. Domino's Pizza, Inc., 615 F.2d 252, 258-59 (5th Cir. 1980).  The only difference is that Brown Bark's claims under O.C.G.A. §§ 10-1-450 and 10-1-450(b) require that the trademark be registered with the Georgia Secretary of State.  O.C.G.A. §§ 10-1-450, 10-1-451.  The Dixie Lily, Alabama King, and Arnett's marks are not.  Therefore, Dixie Mills is entitled to summary judgment on Brown Bark's claims under §§ 10-1-450 and 10-1-451 with respect to these marks.  Because Brown Bark's remaining trademark-related claims are governed by the same standards as its Lanham Act claims, the Court addresses Counts I through IV together.

a.   <u>Inherent Distinctiveness</u>

Personal names and geographically descriptive marks are not inherently distinctive and therefore require proof of secondary meaning for protection.  The Arnett's and Alabama King marks fall into these categories.  Moreover, the common component of the Dixie Lily mark, Dixie, is also geographically descriptive.  Accordingly, none of the word marks may be protected without proof of secondary meaning.

Moreover, the accompanying trade dress is not inherently distinctive.  Whether trade dress is inherently distinctive depends on whether: "(1) the design or shape is a common, basic shape or design; (2) it was unique or unusual in a particular field; and (3) it was a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods which consumers view as ornamentation."   1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,  § 8:13 (4th ed. 2010); <u>see also</u> <u>Brooks Shoe Mfg. Co. v. Suave Shoe Corp.</u>, 716 F.2d 854, 858 (11th Cir. 1983).  In other words, trade dress is inherently distinctive if "the design, shape or combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin."   1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 8:13 (4th ed. 2010).  Here, there

is no evidence to show that the trade dress associated with the products at issue is inherently distinctive as a matter of law.

   b.   Secondary Meaning

Secondary meaning exists where there is a mental association in the buyers' minds between a product's trademark and its source.  The plaintiff must prove that such an association exists by a preponderance of the evidence.  In so doing, the following factors may be relevant: (1) direct consumer testimony; (2) consumer surveys; (3) exclusivity, length, and manner of use; (4) amount of sales and number of customers; (5) established place in the market; (6) amount and manner of advertising; and (7) proof of intentional copying. Echo Travel, Inc. v. Travel Assocs., Inc., 870 F.2d 1264, 1267 (7th Cir. 1989); see also Conagra, Inc. v. Singleton, 743 F.2d 1508, 224 U.S.P.Q. 552 (11th Cir. 1984).

There is significant evidence suggesting that the Dixie Lily, Alabama King and Arnett's trademarks and trade dress acquired secondary meaning in connection with SSB's products.  The Dixie Lily mark was first registered in 1933.  It is the umbrella brand for all of the other trademarks at issue.  Its logo and packaging have not changed appreciably since at least 1997, when SSB acquired the trademark. Moreover, there is evidence that retailers associate the mark with its source.  For example, one grocery store advertised Dixie Mills as "the new Dixie Lily."  However,

there is no evidence that the mark has secondary meaning identifying the Plaintiff as the source of any products.   Therefore, the Plaintiff's claim with respect to these trademarks and trade dress must fail.

2.     The Pine Mountain Brand

Dixie Mills also moves for summary judgment on Brown Bark's trademark claims relating to the Pine Mountain brand.  In its complaint, Brown Bark alleges that Dixie Mills filed notice of its intent to register and use the Pine Mountain mark. However, the evidence shows that Dixie Mills withdrew its application when Brown Bark filed this lawsuit and never used the Pine Mountain mark in commerce.  Because Dixie Mills did not use the mark, it cannot be liable for trademark or trade dress infringement.

Brown Bark also says that Dixie Mills' Stone Mountain mark infringes its Pine Mountain mark.  However, Brown Bark does not mention the Stone Mountain mark anywhere in its complaint.  Brown Bark explains that the complaint did not include this allegation because Brown Bark was not aware that the Defendants were using the Stone Mountain mark until discovery began.  However, whatever its reasons, Brown Bark's complaint was insufficient to put Dixie Mills on notice of its claim regarding the Stone Mountain brand.  Therefore, Dixie Mills is entitled to summary judgment on Brown Bark's Pine Mountain claim.

### B.    Conversion and Replevin Claims

Dixie Mills also moves for summary judgment on Brown Bark's conversion and replevin claims.  To recover damages for conversion or replevin under Georgia law, a plaintiff must prove the value of the lost property.  This requires the plaintiff to "furnish[] the jury with sufficient data to estimate the damages with reasonable certainty."  See Lay Bros., Inc. v. Golden Pantry Food Stores, Inc., 273 Ga. App. 870, 874 (2005).  Brown Bark has not done this.  Its  own damages expert said that he was "unaware of any documents that provide an accurate fair market value of this equipment or inventory [and] unable to quantify any damages with respect to the conversion of equipment and inventory by Dixie Mills."  (Dixie Mills' Mot. for Summ. J., Ex. 18 at 46.)  Although Brown Bark points to a list of equipment provided by Dennis Dahl, a former SSB director, and associated figures relating to the equipment's fair market value, Brown Bark's expert discounted this testimony as unreliable because "the accumulated depreciation [referenced in the list] reflects depreciation for tax purposes; thus the values listed are not necessarily the true fair market value of the equipment."  (Id.)  Without more, a jury could not estimate the value of the lost property with reasonable certainty.  Therefore, Dixie Mills is entitled to summary judgment on Brown Bark's conversion and replevin claims.

C.   <u>Breach of Fiduciary Duty Claim</u>

Dixie Mills also moves for summary judgment on Brown Bark's breach of fiduciary duty claim.   Brown Bark says that Jack Donald and Richard Colwell breached their fiduciary duty to SSB by locking SSB out of the Tifton facility in 2007. When SSB defaulted on its note, Brown Bark obtained a judgment awarding it all of SSB's assets, including general intangibles.   The parties dispute whether "general intangibles" includes SSB's breach of fiduciary duty claim.   The issue turns on which version of the UCC applies to the claim.   Tennessee adopted a revised version of the UCC in 2001.   Under the revised version, the term "general intangibles" does not include commercial tort claims.   The earlier version did not address the issue.   Dixie Mills says that the current version applies and argues that Brown Bark did not receive any cause of action when it foreclosed on SSB's assets.   Brown Bark says that the earlier version applies and argues that general intangibles should include tort claims under that version.

As a general rule, the current version of Article 9 applies to security interests that were entered into or created before its July 1, 2001 effective date.   Tenn. Code Ann. § 47-9-707.   However, an exception applies to security interests that were not governed by the former Article 9.   <u>Id.</u>   Those transactions may be "enforced as required or permitted by [the revised act] or by the law that otherwise would apply if

[the revised act] had not taken effect." Id.  Brown Bark says this exception applies to SSB's fiduciary duty claim.  It does not.  Moreover, even if the exception applied, it allows the Court to apply the current Article 9 where appropriate.  Here, the tort claim at issue did not arise until five years after Tennessee adopted the new version of the UCC.  Therefore, even if the exception is applicable, applying the current version of Article 9, which excludes commercial tort claims from the definition of general intangibles, makes more sense.    Therefore, Dixie Mills is entitled to summary judgment on Brown Bark's breach of fiduciary duty claim.

D.    Civil Conspiracy Claim

Finally, Dixie Mills moves for summary judgment on Brown Bark's civil conspiracy claim.  To recover damages on a civil conspiracy claim under Georgia law, the plaintiff must show that "two or more persons, acting in concert, engaged in conduct that constitutes a tort."  Miller v. Lomax, 266 Ga. App. 93, 103 (2004). Because all of the Plaintiff's underlying tort claims fail, there can be no civil conspiracy claim against Dixie Mills.  Therefore, Dixie Mills is entitled to summary judgment on this claim.

## V.  El Dorado's Motion for Summary Judgment

El Dorado Paper Bag Manufacturing Co., who printed allegedly infringing packaging for Dixie Mills, moves for summary judgment on Brown Bark's trademark infringement, unfair competition, conversion, replevin, and civil conspiracy claims.

### A.    Contributory Trademark Infringement

El Dorado says that it is entitled to summary judgment on Brown Bark's trademark infringement and unfair competition claims because (1) Brown Bark did not properly plead contributory infringement, and (2) even if Brown Bark properly pled contributory infringement, El Dorado is an "innocent infringer."   Because the underlying infringement claims fail, El Dorado is entitled to summary judgment on the claim of contributory infringement.

### B.    Conversion and Replevin Claims

El Dorado also says that it is entitled to summary judgment on Brown Bark's conversion and replevin claims because it made a good-faith effort to return all printing plates and other property to Brown Bark in a timely manner.  Brown Bark does not address these claims in its response brief.  Accordingly, El Dorado's Motion for Summary Judgment on these claims is granted as unopposed.

C.    <u>Civil Conspiracy Claim</u>

El Dorado also moves for summary judgment on Brown Bark's civil conspiracy claim. Because all of the tort claims fail, there can be no liability for civil conspiracy.

VI.   <u>Conclusion</u>

For the reasons stated above, Dixie Mills' Motion for Summary Judgment [Doc. 190] is GRANTED, El Dorado's Motion for Summary Judgment [Doc. 191] is GRANTED, Adams' Motion for Summary Judgment [Doc. 182] is GRANTED, and Brown Bark's Motions for Partial Summary Judgment [Doc. 184, 185] are DENIED.

SO ORDERED, this 6 day of August, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge